## JOHN DOWNS vs. THEODORE C. LYMAN.

A demandant in a writ of entry, who claimed the land under an ancient grant to one S. H. in order to shew, that the land demanded was the land granted to S. H. shewed in evidence grants by S. H. to divers persons, who entered and built mills upon the demanded premises; it was held to be competent for the tenant to rebut this evidence by shewing, that some of S. H.'s grantees, who entered as aforesaid, abandoned the demanded premises, declaring, that they did it, because the owner refused to convey the land to them

THIS was a writ of entry, in which the demandant counted upon his own seisin of one sixteenth part of a tract of land in Milton, and upon a disseisin by the tenant, and was tried here, upon the general issue, at February term, 1825.

The demandant gave in evidence to the jury, a grant made to one *Samuel Ham*, by the proprietors of the town of Rochester, within the ancient limits of which the demanded premises lay, of " the mill privilege at the floom." This grant was made in the year 1763. In 1769, *Ham* conveyed to one *Joseph Roberts* one eighth of the privilege, who in 1776 conveyed the same to *D. Garland* and *Joseph Tibbetts*; and in 1797, *Garland* conveyed his interest, being one sixteenth part to the demandant.

To prove, that " the privilege at the floom" embraced the demanded premises, the demandant gave in evidence to the Jury, deeds of *Samuel Ham*, made in 1769, by which he conveyed to *William Allen* one eighth, to *W. M'Duffie* one sixteenth, and to *Amos Peasly* one fourth, of the said privilege at the floom, and then shewed, that *W. Allen* and others, grantees of *Samuel Ham*, built a mill in the year 1770, on the demanded premises, which was always called the floom mill.

The tenant gave in evidence a deed of *Jonathan Dame* and *Stephen Berry*, made in 1770, by which they conveyed to *William Allen* lot No 64, and a deed of *Mary Livermore*, made in 1778, by which she conveyed to *Joshua Allen* lot No. 65. The tenant then shewed, that the demanded premises had been conveyed to him as part of lots No. 64 and 65, conveyed as aforesaid, to *Joshua* and *William Allen*, from whom he derived his title.

The tenant then attempted to shew, that the floom was a remarkable place in the river 200 rods above the demanded premises, and, among other testimony, produced a witness,

who swore, that some of *Ham's* grantees, who built the mill in 1770, admitted, when they were about to rebuild the mill in 1785, that the mill stood on *William Allen's* land, and some of them refused to rebuild, because *W. Allen* refused to convey to them the privilege.

The demandant's counsel objected, that these admissions, of the owners of the mill, were not evidence against the demandant, because not shown to have been made by the owner, under whom he claimed. But the court overruled the objection and admitted the evidence ; and the jury having returned a verdict for the defendant, the demandant moved the court to grant a new trial.

*Mason* and *Eastman*, for the plaintiff.

*Woodbury* and *Woodman*, for the defendant.

RICHARDSON, C. J. It seems to be well settled, that the declarations of a person in possession of land, as to the nature of his possession, are evidence, not only against him, but against all persons claiming under him. 10 *John.* 377, *Jackson vs M'Call.*—4 ditto 230, *Jackson vs. Bard.*—2 *D. & E.* 58, *Davis vs. Pierce.*—1 *Esp. N. P. C.* 458, *Walker vs. Broodstock.*—1 *John.* 339, *Waring vs. Warren.*—*Phill. Ev.* 73.—5 *B. & A.* 223, *Doe vs. Pettell.*—1 *Campb.* 367.—4 *Taunt.* 14, *Peaceable vs. Watson.*

But this rule does not apply in the case now before us. For here neither party claims the land under those, whose declarations were admitted in evidence.

Nor can this case be governed by the rule, that in a civil suit against several persons, who are proved to have a joint interest in the decision, a declaration made by one of those persons, concerning a material fact within his knowledge, is evidence against him, and all, who are parties with him to the suit. 18 *John.* 330, *Jackson vs. M'Vey et al.*—17 ditto 335, *Brandt vs. Klein.*—11 *East* 588. For those, whose declarations were admitted in evidence, were not parties to this suit.

The declarations of deceased persons are admissible in evidence, where they appear to have been made against their interest. *Phill. Ev.* 191—193.—2 *Pick.* 536. But,

in this case, it does not appear, that the persons, whose declarations were admitted, were dead.

But there is another ground, on which, we think, the evidence was admissible.

The proprietors of Rochester, in 1763, granted to *Samuel Ham* " the mill privilege at the floom." The demandant claimed a part of that privilege under a title derived from *Ham.* The question upon the trial was, whether the demanded premises were a part of " the mill privilege at the " floom," granted to *Ham*, as aforesaid ? In order to maintain the affirmative side of this question, the demandant shewed, that *Ham*, in 1769, granted to *Allen* and others, severally, certain undivided portions of " the mill privilege " at the floom ;" and those grantees, in 1770, erected a mill on the land demanded, which was always called " the floom " mill." The object of introducing this evidence was to induce the jury to infer, that the floom mill was built upon " the mill privilege at the floom," which had been granted to *Ham* by the proprietors of Rochester.

The tenant contended, that *the mill privilege at the floom* was two hundred rods above the land described in the demandant's writ ; and to rebut the evidence, resulting from the circumstance, that *Ham's* grantees took possession of the demanded premises and built a mill there in 1770, he shewed in evidence, that some of those grantees, in 1785, after the mill they had erected was burnt, refused to join in rebuilding the mill, because *Allen* would not convey to them the land, where the mill had stood.

The rule of law is, that where it is necessary, in the course of a cause, to inquire into the nature of a particular act, and the intention of the person, who did the act, proof of what the person said, at the time of doing it, is admissible in evidence, for the purpose of shewing its true character. *Phill. Ev.* 202. Now, in the present case, it was most manifestly material to ascertain on what ground the individuals, who refused to join in erecting another mill, declined to proceed. They might have declined, because they had found the mill unproductive ; or because they did not any longer choose to be concerned in mills ; or because they did not own

the mill privilege. The weight of the evidence resulting from their act, as an answer to the evidence of the demandant, depended altogether upon the ground, on which they refused to re-build. If they refused, because they had no title, it was strong evidence, that the land was not *the mill privilege at the floom*, which had been granted to *Ham*. Now what could be better evidence of their views and motives, than their declarations at the time ? Their declarations, that *Allen* owned the land, coupled with a refusal to join in re-building the mill on that account, were virtually an abandonment of the land, as belonging to another. Their declarations were therefore admissible, as a part of the *res gestæ*. They were not evidence, that *Allen* owned the land ; but they were most clearly evidence, that those who made them, did not, at that time, claim the land under *Ham* ; and this was all they were introduced to prove. We are not aware, that there could be any better anwser to their possession, as evidence of their title, than the proof of the fact, that they abandoned the land, declaring it to belong to another.

We are therefore of opinion, that the evidence was properly admitted, and that there must be

*Judgment on the verdict.*