Ingalls, J.:
This action was instituted by the plaintiff to recover the possession of certain merchandise which was' purchased by the defendants of the plaintiff, upon the ground that in making such purchase the defendants perpetrated a fraud upon the plaintiff which rendered the contract void, and prevented the vesting of title to the property thus obtained, in the defendants. We have examined the evidence with care, and are satisfied that upon the merits the jury reached a correct conclusion. The defendants produced no evidence to explain the transaction, and the result seems in accordance with the equity of the case. The property, which was replevied, was 'identified, upon the trial, as a portion of the cutlery sold by the plaintiff to the defendants. It appears by the evidence that such of *484 the goods as were delivered, previous to May 31,1876, had been paid for by the defendants. It was insisted at the trial that the plaintiff must show affirmatively that the particular goods which had been seized by the plaintiff were actually sold to the defendants subsequent to that date. The court submitted to the jury, as a question of fact,, for them to find whether or not the goods in question had been paid for by the defendants; and they must necessarily have determined that such payment had not been made, and we thinlc the evidence is in harmony with such conclusion. The evidence is to the effect that the defendants replenished their stock of cutlery from time to time as it became reduced or exhausted, and we deem the inference reasonable and justifiable that the portion of the cutlery which remained unsold in the defendants’ store, and which was replevied by the plaintiff, had been sold by the company to the defendants subsequent to May 31,1876, and therefore not paid for. The case discloses that the defendants repeatedly urged the plaintiff to send forward the cutlery, to enable them to fill orders for goods, which were delayed by them, because their stock had become so reduced that they were unable to supply such demand. If the goods which the plaintiff seized had been paid for, the defendants could have shown it, and, having omitted to do so, should not complain of the inference which the jury has drawn from the facts and circumstances submitted to them upon the trial, bearing upon that question. If the defendants commingled the cutlery as it was delivered from time to time by the plaintiff, so that it was rendered impossible or impracticable for the latter to identify with certainty the particular articles which were furnished to the defendants subsequent to May 31, .1876, the plaintiff should not be required to furnish positive evidence of such identity. If doubt existed as to whether the goods replevied were a portion of the cutlery sold to the defendants by the plaintiff, a very different question would be presented; but starting with that fact, established in favor of plaintiff, we deem the evidence sufficient to sustain the conclusion of the jury that the goods in question had not been paid for. When inferences are to be drawn by a jury from facts and circumstances submitted for their consideration, the appellate tribunal reluctantly interferes with their determination. (Rounds v. *485 Delaware, Lackawanna & Western R. R. Co., 64 N. Y., 138; Cothran v. Collins, 29 How. Pr., 155-170; Morss v. Sherrill, 63 Barb., 21.) In Bernhardt v. Rensselaer & Saratoga R. R. Co. (1 Abb. Ct. App. Dec., 134), Judge Selden remarks : “ If there are inferences to be drawn from the proof, which are not certain and incontrovertible, they are for the jury.”
Assuming that the sale was void on account of' the fraud of the defendants, Howe, Babcock & Post, and therefore that they acquired no valid title as against the plaintiff, the levy by virtue of an execution in favor of a creditor of such firm, could not have the legal effect to divest the title of the plaintiff and defeat the remedy resorted to for the recovery of the property, as such creditor cannot be regarded as a bona fide purchaser, and therefore could only acquire the title which Rowe, Babcock & Post possessed at the time of such levy. The fraud perpetrated by the defendants above-named prevented their acquiring title to the goods in question as against the plaintiff, and is also fatal to the claim of the execution creditor. (Cary v. Hotailing, 1 Hill, 311; Hersey v. Benedict, 15 Hun, 285; Lacker v. Rhoades, 45 Barb., 500; Root v. French, 13 Wend., 570; Mowrey v. Walsh, 8 Cow., 238; Van Cleef v. Fleet, 15 Johns., 147; Van Kleek v. Leroy, 4 Abb. Pr., N. S., 431; Hall v. Erwin, 60 Barb., 350.)
For the purpose of establishing the fraudulent, intent with which the cutlery was purchased by the defendants of the plaintiff, it was competent for the latter to prove similar transactions of Rowe, Babcock & Post with other parties, which occurred at or about the time the goods in question were purchased of the plaintiff. (Miller v. Barber, 66 N. Y., 568; King v. Fitch, 1 Keyes, 432; Hersey v. Benedict, 15 Hun, 283; Cary v. Hotailing, 1 Hill, 311; Hall v. Erwin, 60 Barb., 350; Amsden v. Manchester, 40 Id., 158.) The admission as evidence, of the statement made by Rowe, Babcock & Post to the commercial agency, does not furnish ground, we think, for reversing the judgment. ’ Sufficient was shown to justify the jury in an inference that such statement was communicated to and acted upon by the plaintiff. The defendants deliberately made the statement, obviously for the pur *486 pose of influencing the conduct of those to whom they intended to apply for credit, and they must have known that the effect thereof would be to mislead and injure those with whom they should have dealings involving credit. The party who makes such a statement should beheld strictly responsible for its truthfulness. The plaintiff, for the purpose of showing that the company had been informed of and had acted upon such statement, with other circumstances, put in evidence the following letter:
“ 95 John St., March 17, 1876.
“ Naugatuck Cutlery Co. :
“ Gentlemen: In reply to your inquiry as to the standing of the house you name, we have heard no rumors prejudicial to them; we were speaking with a peison last week who was doing business with them, and spoke highly of their position, and since receiving your letter we have made inquiry from mercantile agency, who' report them well. I shall be in your neighborhood probably next week, and will talk with'you further.
“Yours truly,
“ WILLIAM BROWN.”
The statement made to the mercantile agency was calculated to inspire confidence in the financial soundness of the defendants, yet it proved to be utterly false, to the knowledge of such defendants, and to the prejudice of the plaintiff. (Cazeaux v. Mali, 25 Barb., 585; Morse v. Swits, 19 How. Pr., 276.) The evidence does not establish a ratification by the plaintiff of the contract of sale, after the company became aware of the fraud. The claim interposed by the plaintiff in the bankruptcy-proceeding, on its face negatives any such intention, as the fraud of the defendants in procuring the cutlery is expressly asserted as the ground of the plaintiff’s claim. It was not shown upon the trial that the plaintiff accepted the notes of Rowe, Babcock & Post, after the plaintiff had acquired a knowledge of the fraud which they had perpetrated upon the company, and consequently such acceptance did not amount to a ratification of the sale of the goods. We do not think a fatal error was committed by admitting parol evidence of the contents of the letter *487 ■which was addressed to the defendants, in answer to their letter of December 3, 1875. Due notice had been given by the plaintiff to the defendants, requiring the latter to produce such letter upon the •trial. And without making any effort to procure the same, or even notifying the plaintiff that they had parted with it, and where it could be found, the defendants contented themselves with an offer upon the trial to show that they had delivered it to the assignee in 'bankruptcy, but who he was, or where he resided, the offer did not «disclose. (Jackson v. Shearman, 6 Johns., 19.) Giving due weight do all the facts and circumstances, we are convinced that the defendants failed to show, or even to offer to show, a state of facts from which the court was bound to conclude that such letter was beyond the control of the defendants, so that they could not produce it upon the trial. It is so much matter of discretion with the judge at the trial, in determining whether a case' is made for the introduction of secondary evidence, that his ruling should not be reversed unless it appears very clearly that error has been committed which has prejudiced the case of the' party who complains. The verdict of the jury was substantially correct, and if any error was •committed in the form of - entering the judgment, the remedy to •correct the same should be by motion rather than an appeal from the judgment.
The offer to surrender the notes upon the trial was all that the law required. No tender of them was necessary before the action was commenced. (Nichols v. Michael, 23 N. Y., 264; Bradford v. Fox, 38 N. Y., 292; King v. Fitch, 1 Keyes, 450.) An examination of the case has convinced us that substantial justice has been attained; and that no error has been established which calls for a reversal of the judgment, which therefore should be ■affirmed, with costs.
Davis, P. J., concurred.
Present — Davis, P. J., and Ingalls, J.
Judgment affirmed, with costs.